### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| DEVELCOM FUNDING, LLC<br>204 Harding Avenue<br>Bellmawr, New Jersey 08031,<br><br>        Plaintiff,<br><br>   v.<br><br>AMERICAN ATLANTIC COMPANY<br>(f/k/a American Dredging Company)<br>1060 First Avenue<br>Suite 400<br>King of Prussia, PA 19406<br><br>        Defendant. | Civil Action No.: 09-01839 RMB-KMW<br><br>     Civil Action |

**WEEKS MARINE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO INTERVENE AS AN INDISPENSABLE PARTY AND TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Thomas R. Valen, Esq.
Jennifer A. Hradil, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500

-and-

William M. Tambussi, Esq.
**BROWN & CONNERY, LLP**
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108
(856) 854-8900

Attorneys for Intervenor
Weeks Marine, Inc.

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY .................................... 3

LEGAL DISCUSSION ............................................................................................ 8

    I.     WEEKS IS A NECESSARY AND INDISPENSABLE PARTY FOR THE
         JUST ADJUDICATION OF THIS ACTION. ................................................ 8

         A.    Weeks Is A "Required Party" Pursuant To Rule 19(A) As It Has
             An Interest Related To The Property Underlying The Action And,
             In Its Absence, The Adjudication Of This Matter Would Impair
             And Impede Weeks' Ability To Protect That Interest Or Subject A
             Party To Inconsistent Obligations .............................................. 9

             1.    Weeks Is A Necessary Party To This Action Because It
                  Effectively Requires An Inquiry Into The Quiet Title Of
                  The Property, And Weeks' Interest In The Property By
                  Virtue Of The SDA Makes It A Necessary Party To The
                  Action ..................................................................... 10

             2.    Weeks Is A Necessary Party To This Action Because
                  Develcom Seeks To Establish Weeks' Liability For
                  Alleged Discharge Of Hazardous Substance At The Facility
                  And, As Such, Weeks Is A Necessary Party To The Action ....... 12

             3.    Weeks Is A Necessary Party Because Develcom Seeks To
                  Compel "Immediate, Full And Unrestricted Access" To All
                  Documents And Information Relating To The Facility,
                  Which Develcom Acknowledges Are Weeks' Documents.......... 14

         B.    Given Weeks' Interests, Weeks Is Indispensable And This Matter
              Must Be Dismissed For Non-Joinder Pursuant To Rule 19(b) ................ 15

             1.    A Judgment Rendered In Weeks' Absence Will Prejudice
                  Weeks ................................................................... 17

             2.    A Judgment Rendered In Weeks' Absence Would Not Be
                  Adequate................................................................ 17

             3.    Develcom Will Not Be Prejudiced By The Dismissal Of
                  This Action Because Develcom Has An Adequate Remedy ....... 18

    II.    IN THE ALTERNATIVE, THIS COURT SHOULD ABSTAIN FROM
         HEARING THIS ACTION PURSUANT TO THE COLORADO RIVER
         DOCTRINE................................................................................ 19

          A.    New Jersey Is A Convenient Forum ....................................... 21

         B.    Avoidance Of Piecemeal Litigation ....................................... 22

# TABLE OF CONTENTS
(continued)

**Page**

| | | | |
|---|---|---|---|
| | C. | First Filed Actions Are Favored | 22 |
| | D. | Whether Federal Or State Law Applies And The Adequacy Of The State Forum To Protect The Rights Of The Nonmoving Party | 23 |
| | E. | Forum Shopping Is Discouraged | 24 |
| CONCLUSION | | | 26 |

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Abend v. City of Oakland,
  2007 WL 627916 (N.D. Cal. Feb. 26, 2007)........................................................21, 22

Active Disposal Serv. v. County of Somerset,
  2009 U.S. Dist. LEXIS 1357 (D.N.J. Jan. 8, 2009) ....................................................20

American Int'l Underwriters, (Phillipines), Inc. v. Cont'l Ins. Co.,
  843 F.2d 1253 (9th Cir. 1988)........................................................................21

Angst v. Royal Maccabees Life Ins. Co.,
  77 F.3d 701 (3d Cir. 1996)..............................................................................8

BIL Mgmt. Corp. v. N.J. Econ. Dev. Auth.,
  2008 U.S. App. LEXIS 8762 (3d Cir. 2008)..............................................................21

Brillhart v. Excess Ins. Co.,
  316 U.S. 491 (1942)........................................................................................23

Burnett v. County of Bergen,
  402 N.J. Super. 319 (App. Div. 2008) ....................................................................10

Central Bergen Props. v. Crown Leisure Prods.,
  1996 U.S. Dist. LEXIS 22483 (D.N.J. Oct. 18, 1996)..............................................12

Colorado River Water Conservation District v. United States,
  424 U.S. 800 (1976) ................................................................................passim

DeCisneros v. Younger,
  871 F.2d 305 (2d Cir. 1989)............................................................................21

Dickson v. Murphy,
  202 Fed. Appx. 578 (3d Cir. 2006) ..................................................................17

DiTrolio v. Antiles,
  142 N.J. 253 (1995)..........................................................................................18

Enfission, Inc. v. Leaver,
  408 F. Supp. 2d 1093 (W.D. Wash. 2005)........................................................23, 24

Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coops.,
  48 F.3d 294 (8th Cir. 1995)............................................................................24

Freeport-McMoRan, Inc. v. KN Energy, Inc.,
  498 U.S. 426 (1991) ..........................................................................................8

Graco, Inc. v. PMC Global, Inc.,
    2009 U.S. Dist. LEXIS 26845 (D.N.J. 2009) ............................................... 9

Haiying Xi v. Shengchun Lu,
    226 Fed. Appx. 189 (3d Cir. 2007) .......................................................... 16

Hartford Life Ins. Co. v. Rosenfeld,
    2007 U.S. Dist. LEXIS 55819 (D.N.J. Aug. 1, 2007) .................................. 20

Hobart Bros. Co. v. National Union Fire Ins. Co.,
    354 N.J. Super. 229 (App. Div.), cert. denied, 175 N.J. 170 (2002) ........................ 18

Housing Auth. of City of New Brunswick v. Suydam Inv., L.L.C.,
    177 N.J. 2 (2003) .................................................................................. 12

Hugoton Energy Corp. v. Plains Resources, Inc.,
    141 F.R.D. 320 (D. Kan. 1992) ........................................................... 11, 16

IFC Interconsult v. Safeguard Int'l Partners,
    438 F.3d 298 (3d Cir. 2006) .................................................................. 20

Interfaith Cmty. Org. v. Honeywell Int'l, Inc.,
    215 F. Supp. 2d 482 (D.N.J. 2002) .......................................................... 13

Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,
    11 F.3d 399 (3d Cir. 1993) ................................................................. 9, 15

Kessler Inst. for Rehabilitation v. Mayor of Essex Fells,
    876 F. Supp. 641 (D.N.J. 1995) .............................................................. 19

Koppers Co. v. Aetna Cas. & Sur. Co.,
    158 F.3d 170 (3d Cir. 1998) .................................................................. 15

Madisonville Traction Co. v. St. Bernard Mining Co.,
    196 U.S. 239 (U.S. 1905) ...................................................................... 19

Manhattan Woods Golf Club, Inc. v. Arai,
    312 N.J. Super. 573 (App. Div. 1998) ...................................................... 18

Marks v. Struble,
    347 F. Supp. 2d 136 (D.N.J. 2004) .......................................................... 18

Moses H. Cone Hosp. v. Mercury Constr.,
    460 U.S. 1 (1983) ................................................................. 20, 21, 23, 24

Nakash v. Marciano,
    882 F.2d 1411 (9th Cir. 1989) ........................................................... 22, 24

National Fire Ins. Co. of Hartford v. Universal Janitorial Supply Corp.,
    2006 WL 892291 (D.N.J. April 6, 2006) ................................................... 21

NXIVM Corp. v. Sutton,
    2007 U.S. Dist. LEXIS 46471 (D.N.J. June 27, 2007) ............................................................. 18

Pit River Home & Agric. Coop. Ass'n v. United States,
    30 F.3d 1088 (9th Cir. 1994) ............................................................................................ 8

Player v. Motiva Enters. LLC,
    2006 U.S. Dist. LEXIS 2288 (D.N.J. 2006) ........................................................................ 12

Pro-Fac Coop., Inc. v. Alpha Nursery, Inc.,
    205 F. Supp. 2d 90 (W.D.N.Y. 2002) ......................................................................... 23, 24

Provident Tradesmens Bank & Trust Co. v. Patterson,
    390 U.S. 102 (1968) ................................................................................................... 17

Shermoen v. United States,
    982 F.2d 1312 (9th Cir. 1992) ................................................................................... 9, 11

St. Paul Fire & Marine Ins. Co. v. Nonprofits United,
    91 Fed. Appx. 537 (9th Cir. 2004) ............................................................................... 23

State Auto Ins. Cos. v. Summy,
    234 F.3d 131 (3d Cir. 2000) .................................................................................... 22, 23

Trent v. Dial Med.,
    33 F.3d 217 (3d Cir. 1994) ..................................................................................... 20, 21

Waterbury v. Safeway, Inc.,
    2006 WL 3147687 (N.D. Cal. Oct. 31, 2006) .............................................................. 23

**Statutes**

28 U.S.C. § 1332 ......................................................................................................... 2, 8

N.J.S.A. 2A:35A-1 ......................................................................................................... 12

N.J.S.A. 2A:35A-4(a) .................................................................................................... 12

N.J.S.A. 46:16-1 ........................................................................................................... 11

N.J.S.A. 58:10-23.11 .................................................................................................... 12

**Other Authorities**

3a J. Moore,
    Moore's Federal Practice ¶ 19.09[1] (1989) ................................................................ 11, 16

Wright et al.,
    Federal Practice & Procedure § 4247 nn.72.1 & 72.2 (Supp. 1994) ............................... 24

**Rules**

Fed. R. Civ. P. 19 .......................................................................................................... 2, 8, 9

Fed. R. Civ. P. 19(a)(1)(B) ..................................................................................................... 9

Fed. R. Civ. P. 19(b) .................................................................................................... passim

Fed. R. Civ. P. 24(a) ............................................................................................................... 9

**Regulations**

N.J.A.C. §7:1E-1.6 .............................................................................................................. 13

## **PRELIMINARY STATEMENT**

Plaintiff Develcom Funding, LLC ("Develcom") has strategically crafted the Complaint in this action to attempt to create the appearance that the Court has diversity jurisdiction. Develcom's claims are, however, part of a much larger dispute that is already pending in state court. Weeks Marine, Inc. ("Weeks") is the plaintiff in the state court action, and is an indispensable party to the claims Develcom seeks to carve out for litigation here. Because joinder of Weeks, an indispensable party, would destroy complete diversity, this action must be dismissed.

At the center of this litigation is a dispute surrounding property located in Logan Township, New Jersey including the largest privately-held confined dredge disposal facility along the Delaware River (the "Facility"). Since 1993, Weeks has had the exclusive right to operate the Facility pursuant to a Sediment Deposit Agreement (the "SDA") with Defendant American Atlantic Company ("American"), the current owner of the property. In or around January 2008, Develcom entered into a Property Sales Agreement with American to purchase the Facility. Among other things, the Property Sales Agreement required American to terminate its agreement with Weeks. American thereafter purported to do so, and thereby, according to Weeks, breached the SDA.

These actions gave rise to an action filed by Weeks in July 2008 in the Superior Court of New Jersey, Gloucester County (the "State Court Action") against Develcom and American. Among other things, Weeks has alleged in the State Court Action that Develcom tortiously interfered with Weeks' rights under the SDA by inducing American to breach the SDA and to attempt to wrongfully terminate it. In a counterclaim against Weeks, Develcom has claimed that Weeks has tortiously interfered with the Property Sales Agreement. Now that it appears Develcom's relationship with American is foundering, Develcom has asserted claims against

American here, including that American breached the Property Sales Agreement by failing to effectively terminate the SDA and by failing to obtain various documents and permits regarding the Facility from Weeks.

This Court should reject Develcom's forum shopping because, as set forth in greater detail below, Weeks is a required and indispensable party. Develcom seeks relief that would necessarily impair Weeks' ability to protect its contractual right to continue to operate the Facility. Given the adversity of Weeks and American in the State Court Action, it cannot be anticipated that American would adequately protect Weeks' interests. Indeed, Weeks, American and Develcom each assert an interest in owning and/or operating the Facility, and none of their rights to own or operate the Facility should be adjudicated in any forum unless all are present. The State Court is such a forum. This Court cannot be such a forum, as both Weeks and Develcom are citizens of New Jersey. See 28 U.S.C. § 1332.

Additionally, although Develcom has not named Weeks in this action, Develcom in effect seeks to impose liability upon Weeks under the New Jersey Compensation and Control Act ("Spill Act"). Develcom's Spill Act claim appears to be based primarily upon Weeks' alleged discharges, for which Weeks has indemnified American in the SDA. Additionally, given that the state court will be adjudicating all of the issues presented by Develcom's Spill Act claim, Develcom has a more than adequate remedy in the State Court Action. Accordingly, "in equity and good conscience," FED. R. CIV. P. 19(b), this action should not proceed without Weeks and, because joinder of Weeks would destroy complete diversity, this action should be dismissed.

Finally, even if the Court had jurisdiction over these claims, the efficiencies attendant to all of the issues being adjudicated in a single forum would counsel the Court to abstain in favor the pending State Court Action under the principles of Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976). The State Court Action parallels this action because both Develcom and American are before the state court and all of the same issues are being adjudicated there. Abstention would avoid the unnecessary piecemeal and duplicative

2

litigation that would otherwise result.  There is also no doubt that abstention in favor of a state forum would adequately protect all interested parties, including those of the New Jersey state and local governmental entities that have an interest in light of the noticed condemnation proceeding and the environmental issues raised with respect to the property.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

American was a dredging company and operated the Facility to dispose of dredge spoils for approximately 100 years.  In 1993, American ceased its dredging operations and sold substantially all of its assets to Weeks.  See Compl. ¶¶ 13-14; Certification of Thomas R. Valen ("Valen Cert."), Ex. 1 (Verified Compl. ¶ 13).  At the same time, American and Weeks entered into the SDA that governs the use and operation of the Facility.  See Compl. ¶ 14; Valen Cert., Ex. 1 (Verified Compl. ¶ 14).

Weeks is a family-owned, New Jersey-based company that was founded in 1919.  As is relevant to this action, since 1993 Weeks has served the greater harborside community along the Delaware River by conducting regular and routine dredging of piers and shipping docks required to accommodate waterway traffic.  See Valen Cert., Ex. 1 (Verified Compl. ¶ 9).  In its routine dredging, Weeks periodically removes accumulated sediment from the floor of the body of water to maintain its depth, allowing vessels to pass through the waterway.  See id.  Weeks then transports that sediment to the Facility and deposits it there, pursuant to the SDA.  See id.  Weeks' operations at the Facility have been subject to strict scrutiny by the NJDEP and other agencies to ensure that they conform with environmental regulations and permitting processes to protect the public.  See id.

The SDA grants Weeks the exclusive right to deposit dredged material at the Facility.  See Valen Cert., Ex. 1 (Verified Compl. ¶ 15; and Ex. A § 2).  It also requires Weeks to deposit at the Facility all sediment it dredges from the Delaware River, its tributaries, and the

Chesapeake and Delaware canals, provided the sediment complies with NJDEP permits and applicable laws and regulations.  See Valen Cert., Ex. 1 (Verified Compl., Ex. A § 10.1).  The SDA establishes a fixed rate paid by Weeks to American per cubic yard of sediment deposited.  See id.  The SDA is not in effect for any particular term, but rather, it remains in effect for as long as all necessary permits are timely renewed by Weeks or until terminated by one of the parties on one of only a few specified grounds for termination.[1]  See id.  Until January 2008, Weeks and American each enjoyed the benefits of their contractual relationship.

On or about January 4, 2008, American entered into the Property Sales Agreement for the sale of the Facility with Develcom, a real estate company specializing in the acquisition, repositioning and redevelopment of real estate projects. See Compl. ¶¶ 1, 30; Valen Cert., Ex. 1 (Develcom's Counterclaim ¶ 30).   The Property Sales Agreement required American to, among other things, terminate the DSA.  See Compl. ¶ 47.  As a result of Develcom's and American's conduct, Weeks instituted an action in the Superior Court of New Jersey, Gloucester County in July 2008, captioned as Weeks Marine, Inc. v. American Atlantic Company and Develcom Funding LLC, C-53-08,  asserting claims against Develcom and American.  Since that time, use of the Facility for the deposit of dredge spoils has ceased pending the outcome of the State Court Action.

As Weeks has alleged in the State Court Action, Develcom induced American to breach certain obligations under the SDA by, among other things refusing to cooperate with Weeks in renewing permits necessary for the continued operation of the Facility.  See Valen Cert., Ex. 1.  Specifically, Section 3.3 of the SDA provides that Weeks is responsible for the renewal of deposit permits but requires American to "fully cooperate in any reasonable fashion as requested by Weeks in connection with the renewal process."  See Valen Cert., Ex. 1 (Verified Compl. ¶

---

[1] For example, the SDA may be terminated by American as to areas of the Facility that are filled.  See Valen Cert., Ex. 1 (Verified Compl. ¶¶14-16 (citing SDA §3.1 and §8.2)).  If only sediment from the Delaware is deposited at the Facility -- as is Weeks' practice and firm intention -- Weeks estimates that it will take as much as 24 years to fill the Facility.  See id. ¶16.  Notwithstanding this, American has asserted that portions of the Facility are filled and, therefore, American has purported to terminate the SDA.  See id. ¶ 27; see also Compl. ¶¶ 25, 27.  The parties' dispute as to whether or not the Facility is filled is subject to mandatory arbitration.

18).  Weeks and American cooperated effectively in accordance with the terms of the SDA for fifteen years -- until after Develcom required in the Property Sales Agreement that American terminate the SDA.  See id. ¶ 19.  As alleged in the State Court Action, in the Spring of 2008, American refused to co-sign a renewal application for a Water Quality Certificate ("WQC"), which is issued by the NJDEP and is required for the continued use of the Facility.  See id. ¶ 19.  Due entirely to the absence of American's signature, the NJDEP denied the WQC.  See id. ¶ 19.  Thereafter, American claimed that the SDA had expired by its terms because Weeks had not timely renewed the WQC.  See Valen Cert., Ex. 3 (Joint Brief of American and Develcom at 20); see also Comp. ¶ 24.  Based upon these facts, Weeks has asserted in the State Court Action a claim against Develcom for tortiously interfering with its rights under the SDA by inducing American to breach its obligations under the SDA.  See Valen Cert., Ex. 1 (Verified Compl. ¶¶ 57-60).  Weeks also asserts breach of contract claims against American based upon its failure to cooperate in the WQC renewal process and upon its wrongful termination of the SDA.[2]  See id. ¶¶ 46-56.

In response, Develcom asserted counterclaims against Weeks for tortious interference with the Property Sales Agreement, for a declaratory judgment, and for liability under the N.J. Spill Act.  See Valen Cert., Ex. 2 (Develcom's Counterclaim); Compl. ¶ 173.  Develcom's declaratory judgment counterclaim seeks much of the same relief as Develcom has requested here, such as compelling access to all of Weeks' books and records regarding the Facility since 1993.  See Valen Cert., Ex. 2 (Develcom's Counterclaim ¶ 56).  Develcom's Spill Act counterclaim is also virtually the same as the claim Develcom asserts here; the only difference is that in the State Court Action, Develcom asserts the claim against Weeks and here Develcom asserts it against American.

---

[2] Weeks moved for a temporary restraining order in the State Court Action seeking to require American to co-sign the WCQ renewal application so that maintenance dredging on the Delaware could continue.  The court denied the application based primarily upon its conclusion that harm to Weeks could be redressed through a damages award.

All of the parties have been participating in the State Court Action since July 2008 and discovery is substantially underway, with Weeks having produced over 54,000 pages of documents to date.  See Valen Cert. ¶ 6.  Rather than assert its current state law claims in that on-going action, Develcom filed the Complaint in this action on or about April 17, 2009.

Though Weeks is not named as a party and though the Complaint strains to avoid asserting a claim against Weeks, the Complaint makes a number of allegations of wrongdoing by Weeks and prays for relief that would undoubtedly affect Weeks' rights.  For example, Develcom claims that American has breached its obligations under the Property Sales Agreement and that American and is unable to transfer clear title to the Facility as required under the Property Sales Agreement because, among other things, Weeks's rights under SDA are filed on the public record.  See Compl. ¶¶ 52-53.  In seeking that the SDA be discharged of the public record, the Complaint relies upon allegations that Weeks' rights under the SDA have either expired or been terminated.  See Compl. ¶¶ 24, 25, 27, 28.  As Develcom is very well aware, the allegations made here by Develcom with regard to the continued viability of the SDA strike at the heart of Weeks' interests and are at the center of Weeks' state court claims against Develcom and American.

In addition to seeking an order discharging the SDA from the public record, the Complaint seeks further relief that would impair Weeks' interests.  For example, Develcom seeks an order requiring the transfer from Weeks of the NJDEP groundwater permit ("GWP") necessary for the operation of the Facility, requiring Weeks to remove allegedly unacceptable deposits from the Facility, requiring the removal of Weeks' equipment and vessels from the Facility, and providing unrestricted access to Weeks' records regarding its operation of the Facility .[3]  See Compl. ¶¶ 141, 173.

---

[3] As Develcom recognizes elsewhere in the Complaint, these records are solely in Weeks' possession.  See Compl. ¶ 105.

Finally, though the Complaint purports to assert a Spill Act claim solely against American, it is clear from the face of the Complaint that Weeks' exclusive operation of the Facility since 1993 is undeniably at the center of this claim.  The Complaint alleges that "Weeks has deposited dredge spoils at the [Facility] that exceed existing environmental soil and groundwater standards" and "that exceed newly-enacted environmental soil and groundwater standards."  <u>See</u> Compl. ¶¶ 17-18.  In fact, the Complaint goes so far as to allege a justiciable controversy between Develcom and Weeks regarding these dredge spoils and the alleged, resulting groundwater and/or soil contamination.  <u>See</u> Compl. ¶ 170.  In light of these allegations and the fact that Develcom has made these very allegations in its counterclaim against Weeks in the State Court Action, <u>see</u> Valen Cert., Ex. 2 (Develcom Counterclaim ¶¶ 46-48, 54). it is clear that Develcom's failure to name Weeks in this action is an improper effort to manufacture diversity jurisdiction where it does not exist.

The property at the center of this litigation is not only at the center of the State Court Action, but it is also the subject of a condemnation proceeding noticed by Gloucester County. The Facility, which is also part of a parcel of land commonly known as Whites Basin, is adjacent to other property south of the Commodore Barry Bridge commonly known as Raccoon Island, which is also owned by American and is subject to the Property Sales Agreement.  Gloucester County has noticed a condemnation with respect to all of Raccoon Island as well as a substantial part of Whites Basin, including some of the Facility.

## LEGAL DISCUSSION

I.     **WEEKS IS A NECESSARY AND INDISPENSABLE PARTY FOR THE JUST ADJUDICATION OF THIS ACTION.**

It is well-settled that the just adjudication of an action must involve all necessary parties to the action.  However, if a "non-diverse intervenor was an indispensable party under Rule 19 when the complaint was filed, the action must be dismissed."  Angst v. Royal Maccabees Life Ins. Co., 77 F.3d 701, 704-05 (3d Cir. 1996) (citing Freeport-McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426 (1991)).  A party is "indispensable" pursuant to Federal Rule of Civil Procedure 19 and, therefore, dismissal is required when: (1) the party is required under Rule 19(a), and (2) if joinder is not feasible, "in equity and good conscience the suit should be dismissed" in the absence of the party under Rule 19(b).  Pit River Home & Agric. Coop. Ass'n v. United States, 30 F.3d 1088, 1099 (9th Cir. 1994); Angst v. Royal Maccabees Life Ins. Co., 77 F.3d 701, 704-05  (3d Cir. 1996); see also FED. R. CIV. P. 19(b).

Develcom purports to bring this action in federal court based solely upon diversity jurisdiction, as Develcom is a New Jersey LLC and American is a citizen of the State of Pennsylvania.  See Compl.  ¶¶ 1-3.  Develcom presumably has chosen not to include Weeks as a defendant because Weeks is incorporated in New Jersey and its presence would destroy complete diversity.  See 28 U.S.C. § 1332.  Nonetheless, Weeks has a substantial interest in the subject matter of this action, and adjudication of the issues presented here in the absence of Weeks would impair its ability to protect those interests.  Because Weeks, therefore, is an indispensable party but joinder of Weeks would destroy diversity, the Court must dismiss the action.  See FED. R. CIV. P. 19(b).  Such dismissal will not prejudice Develcom in any way, as it could seek relief in the State Court Action, where related, and in some instances identical, claims are already being adjudicated.

**A.**  **Weeks Is A "Required Party" Pursuant To Rule 19(A) As It Has An Interest Related To The Property Underlying The Action And, In Its Absence, The Adjudication Of This Matter Would Impair And Impede Weeks' Ability To Protect That Interest Or Subject A Party To Inconsistent Obligations.**

To determine whether a party is required for adjudication, the court considers the nature of that party's interest and whether adjudication in the party's absence would impair the party's ability to protect that interest or would subject the existing parties to inconsistent obligations. Specifically, a party is "required" under Rule 19(a) when:

> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

See FED. R. CIV. P. 19(a)(1)(B).  Whether an absent party's ability to protect its interests would be impaired "requires a court to take into consideration the effect that resolution of the dispute among the parties before it may have on an absent party", in this case, Weeks.[4]  See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 406 (3d Cir. 1993) (citing FED. R. CIV. P. 19).  In addition, "[i]n assessing an absent party's necessity under Fed. R. Civ. P. 19(a), the question whether that party is adequately represented parallels the question whether a party's interests are so inadequately represented by existing parties as to permit intervention of right under Fed. R. Civ. P. 24(a)."  See Shermoen v. United States, 982 F.2d 1312, 1318 (9th Cir. 1992).  To determine whether Weeks' interests are adequately represented by the existing parties, three factors must be considered: (1) whether American will make all the arguments

---

[4] Apart from the impact on the absent party, a party is also "required" under Rule 19(a) if there is a "risk to the 'existing part[ies]' of 'incurring double, multiple, or otherwise inconsistent obligations because of the [absent person's] interest.'"  See Graco, Inc. v. PMC Global, Inc., 2009 U.S. Dist. LEXIS 26845, *32-33 (D.N.J. 2009). Weeks need not address this aspect of the rule because, as set forth above, Weeks is required given the impairment of its interests that would result if this action were adjudicated without Weeks.

Weeks would put forth in this matter; (2) whether American is capable and willing to make these necessary arguments; and (3) whether there are any arguments that Weeks would offer that would be neglected by American and Develcom.  Id.

As discussed in the subsections that follow, the considerations in Rule 19(a) are met here. Weeks' interests in the Facility and the SDA are inextricably intertwined with the claims asserted by Develcom in this action.  For example, whether American breached the Property Sales Agreement by failing to convey clear title to Develcom necessarily implicates questions of whether the SDA has expired or American has effectively terminated it.  Additionally, the relief sought by Develcom -- discharge of the SDA from the public record, unrestricted access to Weeks' books and records, and dispossessing Weeks of its WQC -- would undoubtedly affect Weeks' interests.  Given the centrality of Weeks' interests to this dispute, adjudication of Develcom's allegations in the absence of Weeks would impair its ability to protect its interests, which will not be adequately protected by either American or Develcom.

      1.      Weeks Is A Necessary Party To This Action Because It Effectively Requires An Inquiry Into The Quiet Title Of The Property, And Weeks' Interest In The Property By Virtue Of The SDA Makes It A Necessary Party To The Action.

Develcom alleges that American has breached the Property Sales Agreement because, among other things, it is unable to "convey good, free and clear title to the property." See Compl. ¶¶ 52-53.  Develcom further claims that "the SDA between American and Weeks was recorded of record" and is an "impediment to title".  See Compl. ¶¶ 52-53.  In short, Develcom has alleged that the SDA creates in Weeks an interest in the Facility such that American cannot convey clear title to the property.  Id.

Although the SDA does not purport to be a lease, license or option with respect to the Facility, Valen Cert., Ex. 1 (See Verified Compl., Ex. A § 12.1), Develcom has taken the position that its recording with the county clerk establishes an encumbrance that affects the property.  See Burnett v. County of Bergen, 402 N.J. Super. 319, 342 (App. Div. 2008)  ("The

county clerk is authorized by statute to record and maintain realty documents, including title to real estate, conveyances, releases, declarations of trust, leases for more than two years, assignments, mortgages, deeds, liens and other encumbrances affecting real property.") (citing N.J.S.A. 46:16-1). By virtue of Develcom's own pleading, Weeks' interest is an "impediment" to clear title as to the Facility. See Compl. ¶ 52.

The issue of whether the SDA has been terminated or has expired is also at the heart of the State Court Action, in which Weeks alleges that American has breached its obligations under the SDA. Both Develcom and American have taken the position in the State Court Action that the SDA has already expired by its terms or has been terminated. Weeks has taken the contrary position, namely that the SDA remains a valid and enforceable contract. Valen Cert., Ex. 1 (Verified Compl. ¶¶ 47). As a result, Weeks' interests in the continued validity of the SDA and defending against havin g it discharged from the public record are not adequately represented by the existing parties before this Court. Rather, both of their interests are in direct conflict to that of Weeks. There is, therefore, no doubt that because Weeks' interests in the property conflict with American's interest, and American will not make the arguments that Weeks would in connection with continued obligations and rights under the SDA. See Shermoen, 982 F.2d at 1318 (finding that the interests of the potential intervenor could not be adequately protected by the United States even where the United States shared a similar overall goal with the intervenor because the government also had a potential conflict of interest).

Courts have found that all parties with an interest in property are not only "required", but also indispensable parties in light of the nature of a quiet title action. "As a general rule, in actions to quiet title, all persons claiming an interest in the subject property are considered indispensable." See Hugoton Energy Corp. v. Plains Resources, Inc., 141 F.R.D. 320, 322 (D. Kan. 1992); see also 3a J. Moore, MOORE'S FEDERAL PRACTICE ¶ 19.09[1] (1989) (noting that an action to quiet title, "all persons interested in the title who will be directly affected by the decree are indispensable parties'"). Here, as Develcom has alleged, Weeks has an interest in the

property that would be affected by any judgment adjudicating the SDA as having expired and, therefore, discharging the SDA from the public record.  Weeks is, therefore, not only a required party, but indispensable to the adjudication of this action.

<blockquote>
2.    Weeks Is A Necessary Party To This Action Because Develcom Seeks To Establish Weeks' Liability For Alleged Discharge Of Hazardous Substance At The Facility And, As Such, Weeks Is A Necessary Party To The Action.
</blockquote>

Develcom purports to bring a Spill Act claim, N.J.S.A. 58:10-23.11 et seq., "pursuant to the provisions of the New Jersey Environmental Rights Act, N.J.S.A. 2A:35A-1 et seq."  Compl. ¶ 183.  If the Court were to determine that, as between the existing parties, Develcom has standing to assert and has asserted a recognized claim for relief under these statutes,[5] Weeks' interest in whether any actionable discharge has occurred renders Weeks a required party under Rule 19(a).  In fact, in asking the Court to issue a declaratory judgment in this federal action, Develcom has alleged that "[a]n actual, substantial and justiciable controversy exists between *Develcom and Weeks* regarding the dredge spoils deposited by American and/or Weeks at the Facility and the groundwater and/or soil contamination otherwise caused by American and/or Weeks."  Compl. ¶170 (emphasis added).  Additionally, Develcom has also asserted this very

---

[5] The Spill Act allows for a private right of action for contribution "for individuals to recover costs for environmental damage to their property".  See Player v. Motiva Enters. LLC, 2006 U.S. Dist. LEXIS 2288, 50-51 (D.N.J. 2006) (citing Housing Auth. of City of New Brunswick v. Suydam Inv., L.L.C., 177 N.J. 2, 18 (2003)).  Furthermore, the Act requires that the NJDEP approve the course of action with regard to "cleanup and removal" and subsequent costs incurred.  See id. at 52.  It is unclear how Develcom has standing to bring Spill Act claim, as (1) Develcom is not the owner of property in question or a party found to be responsible for cleanup and removal costs, nor have (2) any costs allegedly incurred by Develcom been approved by the DEP for assessment and/or remediation of the property.

Although, in the state action Develcom purports to bring a Spill Act claim against Weeks, Develcom in this action has chosen to bring a Spill Act claim against American pursuant to the New Jersey Environmental Rights Act ("ERA").  However, the ERA does not affect Develcom's lack of standing to recover contribution damages under the Spill Act.  Rather, the ERA merely provides a means for a private person, in this instance Develcom, to seek "injunctive or other equitable relief to compel compliance with a statute, regulation or ordinance, or to assess civil penalties for the violation as provided by law" for "actual or threatened environmental pollution" resulting from the operations at the Whites Basin Facility.  See N.J.S.A. 2A:35A-4(a).  The relief sought by Develcom, specifically a right of contribution, is not available under the ERA.  See Central Bergen Props. v. Crown Leisure Prods., 1996 U.S. Dist. LEXIS 22483, 10-11 (D.N.J. Oct. 18, 1996) (dismissing plaintiff's claim for indemnification, contribution, and court costs because the plaintiff was "limited to injunctive or other equitable relief and the assessment of civil penalties when his claim is brought under the ERA to enforce a New Jersey environmental statute").

claim against Weeks in a counterclaim in the State Court Action.  See Valen Cert., Ex. 2
(Develcom Counterclaim ¶¶ 57-62).

Develcom alleges -- both here and in the State Court Action -- that Weeks, as the
operator of the Facility since 1993, deposited hazardous substances that exceeded the applicable
standards.  Compl. ¶¶ 17-19; Valen Cert. Ex. 2 (Develcom Counterclaim ¶¶ 46-48).  Pursuant to
the SDA, Weeks has exclusively operated the Facility as a dredge deposit facility since 1993.  As
far as Weeks is aware, American has not operated or made any deposits at the Facility since
1993.  Develcom does not allege that American made any deposits prior to 1993 that exceeded
the then-applicable standards.  As a result, Develcom's claim appears to be based solely upon
Weeks' alleged misconduct.

While the Spill Act establishes that owners (American) and operators (Weeks) are jointly
and severally liable for any discharge in violation of the Act, Weeks and American have pre-
determined the issue of their respective liability in the SDA.  Specifically, the SDA provides that
Weeks shall indemnify American for any claims that "arise out of or relate to . . . Unacceptable
Sediment or Hazardous Substances . . . or violations of . . . Environmental Laws at the Facility."
Valen Cert. Ex. 1 (Verified Compl. Ex. A § 11).  As a result, American's interests are not aligned
with Weeks', and because American has no economic incentive to defend against liability based
upon any discharges made after 1993, it is not likely to put forth all the arguments that Weeks
would.  For example, while a "discharge" under the Spill Act is a strict liability offense, any
permitted discharge is exempted by the New Jersey Administrative Code.  A "discharge" is
defined as "any intentional or unintentional action or omission, *unless pursuant to and in
compliance with the conditions of a valid and effective Federal or State permit*, resulting in the
releasing, spilling, pumping, pouring, emitting, emptying or dumping of a hazardous substance. .
. ."  N.J.A.C. §7:1E-1.6a (emphasis added); see also Interfaith Cmty. Org. v. Honeywell Int'l,
Inc., 215 F. Supp. 2d 482, 495 (D.N.J. 2002) (referencing N.J.A.C. §7:1E-1.6 when discussing
the definition of "discharge").  Weeks would argue that all of its deposits at the Facility since

1993 were properly permitted and, therefore, not actionable under the Spill Act.  However, American was not involved in the details of the complex environmental reporting required by the permits for the Facility and undertaken by Weeks as contemplated under this SDA.  As such, American lacks not only the incentive but the information necessary to establish that all of Weeks' deposits were permitted and, therefore, cannot constitute a "discharge."  For this reason as well, Weeks is a required and necessary party to this action and its absence in this action would impair and impede Weeks ability to protect its interests in defending the propriety of all of its deposits at the Facility.

> 3.   Weeks Is A Necessary Party Because Develcom Seeks To Compel "Immediate, Full And Unrestricted Access" To All Documents And Information Relating To The Facility, Which Develcom Acknowledges Are Weeks' Documents.

Develcom alleges that American has not provided it with information and documents necessary for Develcom to complete its due diligence related to the Property Sales Agreement, and, as a result, has defaulted on its obligations under that agreement.  Compl. ¶¶ 101-08.  As Develcom acknowledges, these documents are solely within Weeks' possession, custody and control.  See Compl. ¶ 105.  As part of Develcom's claim for declaratory and injunctive relief, Develcom seeks "immediate, full and unrestricted access to all files, books, records, documents and information relating to the Facility and/or to American's and/or Weeks' operation of the Facility."  See Compl. ¶ 173(a).  Since Weeks has been the exclusive operator of the Facility since 1993, the documents and information Develcom seeks are Weeks' documents, and Weeks has an undeniable interest in the disclosure or non-disclosure of its business records.  No request for an order compelling access to Weeks' documents or information should be entertained in Weeks' absence.

Moreover, this very same claim has been asserted by Develcom in a counterclaim against Weeks in the State Court Action.  There, Develcom asserts that Weeks has an obligation to provide Develcom with access to these documents and alleges that a "justiciable controversy

exists between Develcom and Weeks relating to the Facility, Weeks' obligations concerning the Facility, and Weeks' obligation to provide Develcom with full access to the books, records and information regarding Weeks' operation of the Facility since 1993." Valen Cert. Ex. 2 (Develcom Counterclaim ¶ 53). As for the relief sought, Develcom seeks the same relief as here, namely, "immediate, full and unrestricted access" to Weeks' books and records. Valen Cert., Ex. 2 (Develcom Counterclaim ¶ 56(a)). As is evidenced by Develcom's request for this relief against Weeks in the State Court Action, Develcom has recognized that this a claim to which Weeks should be a party.

> **B.    Given Weeks' Interests, Weeks Is Indispensable And This Matter Must Be Dismissed For Non-Joinder Pursuant To Rule 19(b).**

As set forth above, whether a party has an interest in the subject matter of an action and is so situated that adjudicating the action without the party would impair that party's ability to protect its interests, see Rule 19(a), is the threshold determination when considering if a party is "indispensable". That "necessary predicate" is clearly met here. See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 405 (3d Cir. 1993). Because joinder of Weeks would destroy complete diversity, the Court must consider the factors set forth in Rule 19(b) to determine if Weeks is indispensable such that the action must be dismissed. See Koppers Co. v. Aetna Cas. & Sur. Co., 158 F.3d 170, 175 (3d Cir. 1998) ("If the party is determined to be a necessary party but cannot be joined because such joinder would defeat diversity, it must then be determined whether the absent party is an indispensable party.").

Rule 19(b) provides:

> If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's

> absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

FED. R. CIV. P. 19(b).  None of these factors are dispositive.  See Haiying Xi v. Shengchun Lu, 226 Fed. Appx. 189, 191 (3d Cir. 2007).  Rather, "[t]he determination of whether a party is indispensable is governed by pragmatic and equitable considerations."  Id.

As set forth above, Develcom alleges that the SDA has been "terminated and/or expired" and seeks an order discharging the SDA from the public record so that American can covey clear title.  See Compl. ¶78.  As such, the relief Develcom seeks is in the nature of a quiet title action.  Numerous courts have recognized that the considerations set forth in Rule 19(b) lead to the conclusion that all parties with an interest are indispensable under these circumstances.  "As a general rule, in actions to quiet title, all persons claiming an interest in the subject property are considered indispensable."  See Hugoton Energy Corp. v. Plains Resources, Inc., 141 F.R.D. 320, 322 (D. Kan. 1992); see also 3a J. Moore, MOORE'S FEDERAL PRACTICE ¶ 19.09[1] (1989) (in an action to quiet title, "all persons interested in the title who will be directly affected by the decree are indispensable parties").  In Hugoton Energy Corp., the court held that because there was a challenge to the validity of old leases "any relief fashioned by [the] court would necessarily affect the interests of the non-joined parties" and found these non-joined parties indispensable to the action.  Id. at 323.  The same is true here; any order regarding the discharge of the SDA from the public record necessarily must be based upon an adjudication that Weeks no longer has an interest pursuant to the SDA.  In "equity and good conscience," no such adjudication should proceed without Weeks.

In addition to the precedent with regard to Develcom's claim to, in effect, quiet title, the factors enumerated in Rule 19(b) independently require a finding that Weeks is an "indispensable" party and that this action should, therefore, be dismissed.

1.      A Judgment Rendered In Weeks' Absence Will Prejudice Weeks.

Develcom seeks a judgment enforcing the Property Sales Agreement, including the "discharge of record, or cause to discharge of record, the SDA".  Compl. ¶20.  As discussed in detail above, the validity of the SDA is at issue in a State Court Action and while the parties to this litigation argue that the SDA has terminated and/or expired, Weeks argues otherwise.  An adjudication for Develcom in this matter would greatly prejudice Weeks and void its agreement with American as well as remove the agreement from the record.  Likewise, a judgment in this Court regarding access to Weeks' documents would prejudice Weeks' ability to protect its interests in its business records.  Finally, as set forth above, Weeks would be prejudiced if the Spill Act claim based upon its alleged discharges were adjudicated in its absence.

2.      A Judgment Rendered In Weeks' Absence Would Not Be Adequate.

With regard to the adequacy of a judgment in Weeks' absence, the United States Court of Appeals for the Third Circuit has noted that "[t]he United States Supreme Court has interpreted this factor to be a determination of the interest of the public in having a dispute completely, consistently and efficiently resolved." Dickson v. Murphy, 202 Fed. Appx. 578, 582 (3d Cir. 2006) (citing Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 111 (1968)). In Dickson, the court held that a judgment absent non-party signatories to an agreement would result in inefficient additional litigation and inconsistent determinations.  Id.  Although Weeks is not a signatory to the Property Sales Agreement, it is a party to the SDA and Develcom seeks discharge of this agreement from the public record affecting Weeks interest.  Thus, as in Dickson, a judgment in this action could result in additional litigation and inconsistent determinations with regard to the SDA.  Additionally, because Develcom has asserted a tortious interference claim against Weeks in the State Court Action, the issue of whether the Property Sales Agreement has been breached would be adjudicated by the two courts.  The same is true with respect to the Spill Act claim.  Develcom seeks to adjudicate the same claim, with respect to the same property based upon the same alleged discharges in two courts.  Such a result is the

epitome of an inefficient and duplicative process that risks inconsistent results.  Such piecemeal litigation over the same issues is not within the public interest.

> 3.     Develcom Will Not Be Prejudiced By The Dismissal Of This Action Because Develcom Has An Adequate Remedy.

Develcom will not be unfairly prejudiced by the dismissal of this action because Develcom is free to bring its claims in state court.  In fact, Develcom has already brought some of them.  All parties are currently before the state court, and the issues virtually overlap.  The continued validity of the SDA and whether any actionable discharges have been made at the Facility are squarely before the state court.  Even the Property Sales Agreement is already at issue in that case as a result of Develcom's counterclaim that Weeks has tortiously interfered with that agreement.  Valen Cert., Ex. 2 (Develcom Counterclaim ¶¶ 66-71).  Indeed, for Develcom to prevail on its tortious interference counterclaim against Weeks, Develcom must establish in the State Court Action that American has breached the Property Sales Agreement.  See, e.g., Marks v. Struble, 347 F. Supp. 2d 136, 142 (D.N.J. 2004) (noting that breach of the agreement is an element of a tortious interference claim); NXIVM Corp. v. Sutton, 2007 U.S. Dist. LEXIS 46471 (D.N.J. June 27, 2007) (same).  Adjudicating Develcom's claims in the State Court Action would promote judicial economy and avoid unnecessarily subjecting the parties to multiple litigations.  Indeed, litigation of all of these issues in the State Court Action is consistent with New Jersey's strong policy of requiring that all claims between all parties be adjudicated in a single action.  See DiTrolio v. Antiles, 142 N.J. 253, 272 (1995) ("The entire controversy doctrine does not require commonality of legal issues.  Rather, the determinative consideration is whether distinct claims are aspects of a single larger controversy because they arise from interrelated facts."); Manhattan Woods Golf Club, Inc. v. Arai, 312 N.J. Super. 573, 577 (App. Div. 1998) ("New Jersey's long-standing entire controversy doctrine requires joinder in one action of all legal and equitable claims related to a single underlying transaction."); see also Hobart Bros. Co. v. National Union Fire Ins. Co., 354 N.J. Super. 229, 240 (App. Div.), cert. denied, 175 N.J. 170 (2002) (stating that the entire controversy doctrine "requires a litigant to

present all aspects of a controversy in one legal proceeding") (citation and internal quotation marks omitted).

Litigation in a New Jersey state court is more than an adequate remedy here.  The State Court Action was filed over 9 months ago, and discovery is substantially underway.  Moreover, given the inherently local interests involved in this case, adjudication of the issues in a state court is appropriate.  The fact that the county has notified American of its intent to begin condemnation proceedings with regard to this property, places this action squarely within the strong public interest of the State.  See Kessler Inst. for Rehabilitation v. Mayor of Essex Fells, 876 F. Supp. 641, 658 (D.N.J. 1995) (stating "an important state interest, is implicated by the state court eminent domain proceeding"); see also Madisonville Traction Co. v. St. Bernard Mining Co., 196 U.S. 239, 257 (U.S. 1905) ("The fundamental fact is that eminent domain is a prerogative of the State. . . .").  Where a case involves such a keenly public interest, courts often recognize that adjudication in a state court is preferred.

Given the nature of Weeks' interests in the subject matter, the centrality of those interests to the dispute over the use of the Facility, and the pending State Court Action involving the same legal and factual issues, the factors set forth in Rule 19(b) virtually compel the conclusion that Weeks is an indispensable party.  "[I]n equity and good conscience", this action should not proceed in Weeks' absence.  Accordingly, the action should be dismissed, leaving the parties to seek relief in the State Court Action.

## II.   IN THE ALTERNATIVE, THIS COURT SHOULD ABSTAIN FROM HEARING THIS ACTION PURSUANT TO THE COLORADO RIVER DOCTRINE.

Even if the Court had subject matter jurisdiction, dismissal of the action would be warranted in deference to the already pending and first-filed State Court Action.  A federal court has discretion to abstain from adjudicating a controversy otherwise properly before it when there

already exists an ongoing parallel state court action.  See, e.g., Hartford Life Ins. Co. v. Rosenfeld, 2007 U.S. Dist. LEXIS 55819, 9-10 (D.N.J. Aug. 1, 2007) (noting that the court has "even greater discretion" in certain cases where declaratory relief is sought).  In accordance with the Supreme Court's ruling in Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976) (hereinafter "Colorado River"), abstention by a federal court is appropriate where a concurrent and related state court action is pending.  Generally, actions are parallel and consideration of abstention under Colorado River is appropriate where the actions involve similar parties and claims.  Trent v. Dial Med., 33 F.3d 217, 224 (3d Cir. 1994).  Parallel cases are those that "involve the same parties and substantially identical claims, raising nearly identical allegations and issues." Active Disposal Serv. v. County of Somerset, 2009 U.S. Dist. LEXIS 1357 (D.N.J. Jan. 8, 2009) (quoting IFC Interconsult v. Safeguard Int'l Partners, 438 F.3d 298, 306 (3d Cir. 2006)).  Here, the concurrent actions are no doubt parallel.  Both parties here are parties in the State Court Action.  And, as set forth above, many of the same claims are asserted.  Both courts will be adjudicating, for example, whether there has been a breach of the SDA, a breach of the Property Sales Agreement, or an actionable discharge under the Spill Act.

Once it is clear that the two actions are, in fact, parallel, whether to abstain in a particular case is based upon discretionary considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Colorado River, 424 U.S. at 817.  The Colorado River doctrine is recognized as a means of addressing these practical goals such that the doctrine is "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." Moses H. Cone Hosp. v. Mercury Constr., 460 U.S. 1, 21 (1983).  In assessing whether abstention is appropriate under Colorado River in a case of concurrent jurisdiction, several considerations are relevant, although none alone is determinative:

1. The inconvenience of the federal forum.

2. The desirability of avoiding piecemeal litigation.

3. The order in which jurisdiction was obtained by the forums.

4.  Which court first assumed jurisdiction over property involved, if any.

5.  Whether federal or state law applies.

6.  Whether the state court proceeding would adequately protect the federal plaintiff's  rights.

Trent, 33 F.3d at 225; Colorado River, 424 U.S. at 818-19; Moses H. Cone, 460 U.S. at 15-16; see also National Fire Ins. Co. of Hartford v. Universal Janitorial Supply Corp., 2006 WL 892291 (D.N.J. April 6, 2006).  These factors are not a checklist, but are meant to be applied in a flexible balancing process.  See BIL Mgmt. Corp. v. N.J. Econ. Dev. Auth., 2008 U.S. App. LEXIS 8762 (3d Cir. 2008); see also American Int'l Underwriters, (Phillipines), Inc. v. Cont'l Ins. Co., 843 F.2d 1253, 1257 (9th Cir. 1988).  "The principal reasons to abstain, once abstention has been found to be possible, are to avoid piecemeal litigation and to adjudicate state-law issues in state court."  See Trent,  33 F.3d at 223 (citing DeCisneros v. Younger, 871 F.2d 305, 309 (2d Cir. 1989)).

As discussed in more detail below, the applicable factors weigh in favor of abstention. Abstention will conserve judicial resources, prevent forum shopping and prevent duplicative proceedings with the potential for inconsistent outcomes.  Therefore, this Court should abstain by dismissing this action and allowing Develcom to seek relief in the first-filed State Court Action.

### A.    New Jersey Is A Convenient Forum

In determining whether abstention is appropriate, a Court should take into account whether the alternative forum is convenient for the nonmoving party.  See, e.g., Abend v. City of Oakland, 2007 WL 627916, at *4 (N.D. Cal. Feb. 26, 2007).  In this matter, there can be no doubt but that the New Jersey state court is a convenient forum.  It is the forum in which the parties are already litigating issues underlying this action.  Furthermore, there is no argument that a federal forum in New Jersey is more convenient than a state court forum.  Therefore, the convenience of New Jersey state court weighs in favor of abstention.

**B.      Avoidance Of Piecemeal Litigation**

"By far the most important factor" in whether to dismiss federal proceedings under the

principles of Colorado River is the strong federal policy in favor of avoiding piecemeal

litigation." Colorado River, 460 U.S. at 16; State Auto Ins. Cos. v. Summy, 234 F.3d 131, 135

(3d Cir. 2000) (stating that "[a] federal court should also decline to exercise its discretionary

jurisdiction when doing so would promote judicial economy by avoiding duplicative and

piecemeal litigation").  This requires a court to determine if there is a "'substantial similarity'

between the state and federal proceedings, but … 'exact parallelism … is not required.'"  Abend

v. City of Oakland, 2007 WL 627916, at *2 (N.D. Cal. Feb. 26, 2007) (citing Nakash v.

Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989)).

Here, the first-filed action involves similar parties and issues.  Not only are Develcom

and American both parties in the two actions, but both litigations revolve around alleged rights to

own and/or operate the Facility.  As set forth above, resolution of this action would require this

Court to adjudicate, among other things, whether Weeks' rights under the SDA have been

terminated.  This is the very issue currently presented in the State Court Action.  Additionally,

whether the Property Sales Agreement has been breached by American is not only an issue in

this action but it is also an element of Develcom's counterclaim against Weeks in the State Court

Action.  Additionally, Develcom purports to assert a Spill Act claim in both actions based upon

the same alleged misconduct by Weeks.  In adjudicating those claims, both courts will be

addressing precisely the same issues.  Accordingly, the proceedings are substantially similar,

requiring that one court adjudicate these issues in order to avoid unnecessary, duplicative

litigation.

**C.      First Filed Actions Are Favored**

Under the Colorado River doctrine, the principle of "wise judicial administration" weighs

in favor of abstention where a state court is the first to obtain jurisdiction over the parallel

actions.  See 424 U.S. at 817.  Weeks filed the State Court Action in July 2008, and the parties

have engaged in substantial discovery.  In fact, Weeks has already produced over 54,000 pages of documents in connection with that litigation.  <u>See</u> Valen Cert. ¶ 6. On the other hand, this action was filed approximately a month ago, and American has not yet responded to the Complaint.  Clearly, the New Jersey state court obtained jurisdiction over the parallel action first and has progressed further than this action.  <u>See</u> <u>Waterbury v. Safeway, Inc.</u>, 2006 WL 3147687, at *3 (N.D. Cal. Oct. 31, 2006) (citing <u>Moses H. Cone</u>, 460 U.S. at 21); <u>Pro-Fac Coop., Inc. v. Alpha Nursery, Inc.</u>, 205 F. Supp. 2d 90, 104 (W.D.N.Y. 2002).  Indeed, abstention is particularly appropriate here, as Develcom is fully aware of the State Court Action and apparently has filed this separate action as an exercise in forum shopping to attempt to gain some tactical advantage. <u>See</u>, <u>e.g.</u>, <u>Enfission, Inc. v. Leaver</u>, 408 F. Supp. 2d 1093, 1100 (W.D. Wash. 2005) ("In the <u>Colorado River</u> context, forum-shopping is improper when a party 'seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules.'").

    **D.**    **Whether Federal Or State Law Applies And The Adequacy Of The State Forum To Protect The Rights Of The Nonmoving Party**

The fifth and sixth factors, regarding the application of state or federal law and adequate protections under the state law, also warrant abstention.  Federal courts frequently will abstain from adjudicating federal actions in favor of ongoing parallel state courts actions where federal law does not govern the underlying dispute and where, as here, the federal court's jurisdiction is based solely upon diversity of citizenship.  <u>See</u> <u>State Auto Ins. Cos.</u>, 234 F.3d at 136 (noting that "[n]ot a single federal question was presented" and that the "state system, [is] a forum that was fully able and prepared to resolve this purely state law issue"); <u>see also</u> <u>Brillhart v. Excess Ins. Co.</u>, 316 U.S. 491, 494-95 (1942) ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending is a state court presenting the same issues, not governed by federal law, between the same parties."); <u>St. Paul Fire & Marine Ins. Co. v. Nonprofits United</u>, 91 Fed. Appx. 537, 538 (9th Cir. 2004) (affirming the district court's decision to stay an action to avoid needless decisions of state law).

The sole basis for federal jurisdiction alleged in Develcom's Complaint is the purported diversity of citizenship between it and American.  See Compl. ¶ 3.  Develcom's claims are premised solely upon state causes of action, including claims under New Jersey environmental statutes, and there are no compelling federal interests in maintaining these claims in federal court.  To the contrary, given the environmental issues, the nature of the property in question as one being used for important local purposes, and the noticed condemnation proceeding, there is a unique state interest in the subject matter of this action.  Given the local interest in the resolution of these claims and the fact that New Jersey law applies to all of Develcom's claims, New Jersey state court provides not only provides an adequate forum but the most appropriate forum for Develcom to pursue its claims.

### E.    Forum Shopping Is Discouraged

Courts often consider whether abstention would discourage forum shopping and "whether the federal or state suit is filed for a vexatious, reactive or tactical reason," although this is not usually cited as a separate factor.  Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coops., 48 F.3d 294, 299 (8th Cir. 1995) (citing Moses H. Cone, 460 U.S. at 17; Nakash, 882 F.2d at 1416-17); Pro-Fac Coop., 205 F. Supp. 2d at 104; Enfission, Inc. v. Leaver, 408 F. Supp. 2d 1093, 1100 (W.D. Wash. 2005); WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 4247 nn.72.1 & 72.2 (Supp. 1994)).  This factor weighs heavily in favor of abstention as Develcom's filing of this Action is clearly an attempt at forum shopping.  As set forth above, that there is an existing controversy with Weeks regarding the very issues set forth in the Complaint, and Develcom has admitted as much.  See Compl. ¶ 170 .  Additionally, it appears that Develcom has intentionally omitted Weeks as a defendant in this case because Weeks would have destroyed diversity jurisdiction.  In fact, it appears that Develcom originally drafted its federal complaint for filing in the State Court Action, as it not only explicitly alleges a justiciable controversy with Weeks, but at one point also alleges that "[i]n or around July 2008, Weeks filed *this action* against Develcom and American."  Compl. ¶ 120 (emphasis added).  Whatever strategies led Develcom to try to

change the forum, attempt to eliminate Weeks as a defendant in this federal action, and avoid the

New Jersey state court, these are precisely the circumstances under which abstention under the

Colorado River doctrine is most appropriate.

**CONCLUSION**

For all of the reasons expressed above, Weeks respectfully requests that the Court grant

its motion and this action be dismissed.

Dated: May 19, 2009
Newark, New Jersey

Respectfully submitted,

By: _____
Thomas R. Valen, Esq.
Jennifer A. Hradil, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500

-and -

By: _____
William M. Tambussi, Esq.
**BROWN & CONNERY, LLP**
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey  08108
(856) 854-8900

Attorneys for Intervenor
Weeks Marine, Inc.